UNITED STATES v. PARK LAND CO.

SAME v. NICHOLS-CHISHOLM LUMBER CO. et al.

SAME v. DAVIS.

(Circuit Court, D. Minnesota, Sixth Division. February 14, 1911.)

**1. INDIANS (§ 18*)—INDIAN LANDS—ALLOTMENT—DESCENT.**

Under Act Feb. 8, 1887, c. 119, 24 Stat. 388, providing for the allotment of Indian reservation lands to full or mixed blood Indians, under trust patents, as amended by Act Jan. 14, 1889, c. 24, 25 Stat. 642, providing that the law of descent and partition in force in the state or territory where the lands are situated shall apply thereto, where the allottee of land in Minnesota dies after his trust patent has issued, his allotment descends to his heirs, as provided by the laws of that state, to be ascertained by the probate court of the county in which the lands are located.

[Ed. Note.—For other cases, see Indians, Cent. Dig. § 49; Dec. Dig. § 18.*]

**2. INDIANS (§ 15*)—INDIAN LANDS—ALLOTMENT—TRANSFER—STATUTES.**

Act Cong. Feb. 8, 1887, c. 119, 24 Stat. 388, provided for the allotment of Indian lands to full and mixed blood Indians, and for the issuance of trust patents restraining transfer. By Act May 27, 1902, c. 888, § 7, 32 Stat. 275, Congress provided that the adult heirs of any deceased Indian, to whom a trust or other patent containing restrictions on alienation had been or should be issued, might convey the land inherited, but that in case of minors such conveyances could be made only under an order of court upon an application made by a guardian duly appointed; all conveyances being subject to the approval of the Secretary of the Interior. Thereafter Act 1902 was amended by Act 1907 (Act March 1, 1907, c. 2285, 34 Stat. 1034), providing that all restrictions as to the sale, incumbrance, or taxation of allotments in the White Earth Reservation in Minnesota held by adult mixed-blood Indians were removed, and that the restrictions should be removed as to full-blood Indians when the Secretary of the Interior was satisfied that they were competent to handle their own affairs. *Held,* that by such amendment all adult mixed-blood Indians acquired the right to transfer their allotments without restriction, whether they had acquired the same by selection or by inheritance from a full or mixed blood adult or minor, and that all such restrictions were also removed as to full-blood Indians on their being able to satisfy the Secretary of Interior that they are able to manage their own affairs.

[Ed. Note.—For other cases, see Indians, Cent. Dig. §§ 17, 29, 37–44; Dec. Dig. § 15.*]

Actions by the United States against Park Land Company, and against Nichols-Chisholm Lumber Company and others, and against W. B. Davis. On exceptions to defendants' answer. Overruled.

Chas. C. Houpt, U. S. Atty., M. C. Burch, Asst. Atty. Gen., and W. A. Norton and Arthur M. Seekell, Sp. Asst. Attys. Gen., for the United States.

R. J. Powell and C. M. Johnston, for defendants.

MORRIS, District Judge (orally). In 1887 Congress passed the general allotment act (Act Feb. 8, 1887, c. 119, 24 Stat. 388). Under that act whoever received an allotment, whether a full-blood or a mixed-blood Indian, received from the government one of the 25 year trust patents provided for therein. In other words, Congress in effect

said, whoever may be permitted to take an allotment under this act on any of these Indian reservations, whether he be a full blood or a mixed blood, upon him the government shall keep its hand and exercise a restraining influence. We are providing for the allotment of these lands for the purpose of leading him toward the habits of civilized life, and, in order to prevent him from being despoiled and to give time for him to acquire those habits, we intend that a restraining influence shall be placed upon him. We intend that the allottee shall go upon his allotment and, abandoning his Indian habits, live upon it and use it as a white man would, and we do not intend to permit him to part with it until a period of 25 years has elapsed, and not even then if the President shall deem it wise to further extend the period. That was the act of 1887, applying to Indian reservations generally.

In 1889 Senator Nelson framed and had passed what has ever since been known as the "Nelson Law" (Act Jan. 14, 1889, c. 24, 25 Stat. 642). That act provides for the removal of the Chippewa Indians here in Minnesota—the Indians up here in the northern part of our state—to the White Earth Indian Reservation, and for allotments to them on that reservation; or, if any of them preferred to stay on the reservations on which they then were, for allotments to them on those reservations. It provided that those allotments should be made in conformity with the general allotment act of 1887, and that the allotments should have the same effect, that is, be held in the same way, as I understand it. The allotments, therefore, made to Indians on the White Earth Indian Reservation here in Minnesota stood exactly as allotments made to Indians on any other reservation under the general allotment act. Now, in that general allotment act, after prescribing the method of making the allotments, and how the title should be held, that is, under the trust patents, with the restriction upon alienation provided for in the act, Congress provided:

"That the law of descent and partition in force in the state or territory where such lands are situate shall apply thereto [that is, to these allotments] after patents therefor have been executed and delivered, except as herein otherwise provided."

I do not understand there is any dispute as to Mr. Powell being correct when he says there is nothing "otherwise provided." So that the law of descent and partition in force in the state of Minnesota applies to these White Earth allotments after patents therefor—after these trust patents therefor—have been executed and delivered. Beam v. U. S., 162 Fed. 260, 88 C. C. A. 240.

[1] As I understand the law, and I think that is the fair construction of it, if any allottee dies after his trust patent has issued, whether full blood or mixed blood, his allotment descends to his heirs, as provided by the laws of the state of Minnesota. And the only way that I know of that we can ascertain who his heirs are and what portion of the allotment those heirs are respectively entitled to would be by proceedings in the probate court. So that, it seems to me to be competent for the probate court of Becker county, where this reservation is, in case of the death of any allottee, whether full blood or mixed blood, to ascertain and declare who his heirs are and in what

proportions they inherit his allotment. I think it is an inheritable estate, governed by the law of descent and partition in the state of Minnesota. And I do not see why, if necessary, the proper proceedings might not be had to partition that allotment amongst the heirs of the deceased allottee. Now, we get down that far. That is the situation after the passage of the Nelson act in reference to allotments on the White Earth Indian Reservation. I understand the Steenerson act does nothing more than enlarge the Nelson allowance of 80 acres to 160 acres.

[2] Now, in 1902—I do not think I need to notice any other acts—in 1902 Congress passed this act of May 27, 1902. I forgot to say that those allotments evidenced by trust patents, under the act of 1887, and under the Nelson act, were not alienable even by the consent of the Secretary of the Interior, as I understand it. (Addressing counsel): Is that right?

One of Counsel: That is right.

The Court: Such allotment could not be conveyed even with the consent of the Secretary of the Interior. Now, in the act of May 27, 1902, c. 888, 32 Stat. 275, Congress removes to some extent the restrictions which it had theretofore imposed upon the sale and conveyance of these allotments, by providing in section 7 that:

"The adult heirs of any deceased Indian to whom a trust or other patent containing restrictions upon alienation has been or shall be issued for lands allotted to him may sell and convey the lands inherited from such decedent, but in case of minor heirs their interests shall be sold only by a guardian duly appointed by the proper court upon the order of such court, made upon petition filed by the guardian, but all such conveyances shall be subject to the approval of the Secretary of the Interior, and when so approved shall convey a full title to the purchaser, the same as if a final patent without restriction upon the alienation had been issued to the allottee."

Adult heirs could themselves sell and convey the land inherited from such decedent; but in the case of minor heirs their interest could be sold and conveyed only by a guardian duly appointed by the proper court, upon the order of such court. Adult heirs could sell and convey. Minor heirs could sell and convey by guardian, after the appointment of a guardian, and an order of court allowing it made upon petition filed by the guardian. But all conveyances, whether of an adult's interest or of a minor's interest, should be subject to the approval of the Secretary of the Interior. Now, there is a withdrawal, as it were, a going back—or a going forward, as to some it may seem to be—from the former position, the original position. Under the original law, the law as it was prior to this act, there could be no conveyance of that land with anybody's consent, by allottee or heir of allottee, whether he be adult heir or minor heir, until the expiration of the 25-year period. That was the situation then. This law allows the interest of the heir, whether he be adult or minor, to be sold and conveyed, if the Secretary of the Interior approves the transaction, and the conveyance then carries complete title, without any restriction whatever, just as if that trust patent had been an unrestricted patent. I do not know what the reason for this departure from the original

law was, unless it was upon this idea: That the allottee, the original allottee, coming out of the tribal relationship and going into separate ownership, would not be supposed to have the same discretion and business judgment that his heirs would have after they had for some time been brought up in the atmosphere of separate ownership.

That was in 1902. Now, going on from that: Senator Clapp, acting as the representative of this state in the Senate of the United States, representing not only the white people of the state but also the Indians of the state, occupying now (I do not know whether he did then or not) the high position of chairman of the committee on Indian affairs of the United States Senate, and being acquainted with the conditions existing here in the state of Minnesota, saw fit to have put upon the statute books this so-called Clapp amendment. First in 1906. Afterwards, in 1907 (Act March 1, 1907, c. 2285, 34 Stat. 1034), he seems to have made a slight change in the language. I shall only consider the 1907 act. This is the amendment:

"That all restrictions as to the sale, incumbrance, or taxation for allotments within the White Earth Reservation in the state of Minnesota, heretofore or hereafter held by adult mixed-blood Indians, are hereby removed, and the trust deeds heretofore or hereafter executed by the department for such allotments are hereby declared to pass the title in fee simple, or such mixed bloods upon application shall be entitled to receive a patent in fee simple for such allotments."

The restrictions of the trust patent are removed as to adult mixed bloods, and, if any such mixed blood wished to have a fee-simple patent, he could get it upon application. The statute then goes on:

"And as to full bloods, said restrictions shall be removed when the Secretary of the Interior is satisfied that said adult full-blood Indians are competent to handle their own affairs, and in such case the Secretary of the Interior shall issue to such Indian allottee a patent in fee simple upon application."

Now, as I construe this Clapp amendment—I take its language as I find it—all restrictions as to the sale, and so forth, for allotments within this reservation heretofore or hereafter *held* by adult mixed-blood Indians are removed. *All* restrictions are removed. And the "trust deeds" (of course "trust patents" is meant) heretofore or hereafter issued by the department for such allotments are declared to pass the title in fee simple. It seems to me, gentlemen, that the contention of Mr. Powell is sound, and that the amendment means just what it says, that *all* restrictions are removed as to these allotments held —no matter how held—*held* by adult mixed bloods. That, it seems to me, is what it means. That is the only way I can read it—*no matter how held.* Therefore, no matter how the adult mixed blood has come to be the holder or owner of an allotment, or part of an allotment, whether by selection, that is, as the original allottee, or by inheritance from a full blood, or by inheritance from an adult mixed blood, or by inheritance from a minor mixed blood, or by inheritance from a full-blood minor—if there can be such an inheritance as that —all restrictions are removed as to the alienation of such allotment, or any part of it, held by any adult mixed blood. The trust patent is declared to convey to him, or vest in him—"pass" to him—if he is an

adult, or 'as soon as he becomes an adult, the fee-simple title, and he has the right to sell it without restriction. That is the way I construe that so-called Clapp amendment.

Now, let us see if we can find any reason for the policy of it. The act of 1902 removed the restriction on alienation as to any heir of a deceased Indian, whether mixed blood or full blood, and whether the heir be adult or minor, to the extent of allowing a sale and conveyance of an inherited allotment, in case of an adult heir by himself and in case of a minor heir by his guardian, with the approval or consent of the Secretary of the Interior. This on the assumption, as it seems to me, as I have heretofore explained, that the heirs of one to whom an allotment has been issued, and who has been put on the path of separate citizenship, and separate ownership, and separate responsibility in the struggle of life, would be more competent in many cases to manage their own affairs than would the original allottee have been; and that the Secretary of the Interior should be the judge as to whether that condition has come about. Then, coming down to the so-called Clapp amendment, it seems to go a step further and say that, when a mixed blood has come to be an adult, he is competent to handle his own affairs, and is therefore competent to sell without being swindled, to make a proper bargain for his land, and to use the money that he gets out of it judiciously. And the act seems to put his coming to the condition of an adult as the time when that competency has come about. Not so, however, with the full-blood adult. As to him, Congress still retains the restriction as to selling, incumbrancing, etc.; but, even as to him, the restriction is removed if the Secretary of the Interior is satisfied that he is competent to manage his own affairs. In other words, it seems to me that by the Clapp amendment Congress meant to say that it is to be conclusively presumed that an adult mixed blood is competent to go ahead and manage his own affairs, and therefore removes from him all restrictions on the sale of any allotment, or interest in any allotment, that he holds, no matter how it has come to him. And, as to an adult full blood, Congress means to say that, while he may also be competent to manage his own affairs, yet we will leave it to the Secretary of the Interior to say whether he is or not.

I think the exceptions to the answer should be overruled.

Mr. Houpt: The court will allow us an exception to the ruling.

The Court: Certainly.